```
       IN THE UNITED STATES DISTRICT COURT FOR THE
              EASTERN DISTRICT OF OKLAHOMA
```

JACKIE SIEDLIK,                  )
                                 )
            Plaintiff,           )
                                 )
v.                               )      Case No. CIV-15-412-JHP-KEW
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social           )
Security Administration,         )
                                 )
            Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Jackie Siedlik (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on June 3, 1982 and was 32 years old at the time of the ALJ's decision. Claimant completed her education through the tenth grade. Claimant has worked in the past as a certified nurse's aide and fast food worker. Claimant alleges an inability to work beginning July 17, 2012 due to limitations resulting from mental problems including anger, depression, anxiety, and bipolar disorder.

3

**Procedural History**

On December 5, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration.

On May 13, 2014, Administrative Law Judge ("ALJ") Ed Werre conducted a further administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. On July 2, 2014, the ALJ entered an unfavorable decision. The Appeals Council denied review of the ALJ's decision on August 21, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) giving "great

weight" to opinion evidence but rejecting their findings; (2) failing to conduct a function-by-function assessment of each of Claimant's impairments; and (3) failing to properly analyze Claimant's urinary incontinence.

**Evaluation of the Agency Physicians' Opinions**

In his decision, the ALJ determined Claimant suffered from the severe impairments of attention deficit hyperactivity disorder ("ADHD"), bipolar, obsessive compulsive disorder ("OCD"), post-traumatic stress disorder ("PTSD"), mood disorder, not otherwise specified, tobacco abuse, and polysubstance abuse, continuous. (Tr. 15). He also found Claimant retained the RFC to perform a full range of work at all exertional levels but with non-exertional limitations. These limitations include that Claimant was able to understand, remember, and carry out simple and some complex instructions consistent with semi-skilled work and was able to relate and interact with co-workers and supervisors on a work-related basis only with no or minimal interaction with the general public. Claimant could adapt to a work situation with these limitations and her medications would not preclude her from remaining reasonably alert to perform the required functions presented in a work setting. (Tr. 17).

After consultation with a vocational expert, the ALJ

5

determined Claimant could perform the representative jobs of kitchen helper, office cleaner, and circuit board assembler, all of which the ALJ determined existed in sufficient numbers in the state and national economies. (Tr. 25). As a result, the ALJ determined Claimant was not disabled from July 17, 2012 through the date of the decision. (Tr. 26).

Claimant contends the ALJ inconsistently gave the opinion of the agency physician "great weight" while not including the totality of their findings in the RFC or hypothetical questioning of the vocational expert. Claimant appears to focus on the state agency psychological examiners and questioning surrounding Claimant's mental RFC. Dr. Paul Cherry, a state agency psychological examiner, determined that Claimant suffered from affective disorders, anxiety disorders, and substance addiction disorders. (Tr. 62). He completed a mental RFC assessment noting a moderate limitation in the ability to understand and remember detailed instructions, moderate limitation in the ability to carry out detailed instructions, and moderate limitation in the ability to interact appropriately with the general public. He stated Claimant could perform simple and some complex tasks and could relate to others on a superficial work basis. She could also adapt to a work situation. (Tr. 63-64).

Dr. Kieth McKee also completed a mental RFC evaluation form on Claimant, signed April 23, 2013. Like Dr. Cherry, Dr. McKee found Claimant was moderately limited in the ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (Tr. 89-90). He also found Claimant was limited in the ability to respond appropriately to changes in the work setting. (Tr. 91).

Dr. McKee also included a narrative statement which read as follows:

> [Claimant] retains sufficient concentration, mememory (sic), and general cognitive abilities to understand, remember, and carry out simple and some but not all more complex tasks with routine supervision.
>
> She has adequate social skills to respond appropriately to supervisors and coworkers on a superficial work basis.
>
> She is limited to work environments that involve only limited or occasional (sic) with the general public.
>
> She is aware of basic hazards and can adapt to a supportive work environment that is not excessively stressful and does not involve numerous changes in daily routines or work duties. . . .

(Tr. 91, 408).

The ALJ concluded that the opinions of State Agency medical consultants were entitled to "significant weight" because "they are deemed experts and highly knowledgeable in the area of disability

7

and because their opinions are largely consistent with the record as a whole." (Tr. 23).

Claimant argues the ALJ should have included a restriction to "supportive employment" which she describes as "one form of sheltered employment" where the worker receives "certain accommodations so that they can perform the work" citing Soc. Sec. R. 83-33. In the briefing, Claimant bleeds the definition over to "sheltered employment", using the terms interchangeably. *Claimant's Opening Brief*, p. 3.

"Sheltered employment" has a very specific definition under the regulations. "Sheltered employment is employment provided for handicapped individuals in a protected environment under an institutional program." *Titles II & XVI: Determining Whether Work Is Substantial Gainful Activity-Employees*, Soc. Sec. R. 83-33 (S.S.A. 1983). Nothing in Dr. McKee's opinion indicates that he intended this specific program when he referred to "a supportive work environment." Indeed, Dr. McKee goes on to state what he considers to be a "supportive work environment" by referring to a place that is not "excessively stressful and does not involve changes in daily routine or work duties." Certainly, a "supportive work environment" can be achieved outside of "sheltered employment." The ALJ did not reject Dr. McKee's opinion but rather

8

incorporated conditions for unskilled, less demanding work. His questioning of the vocational expert reflected this less stressful environment. (Tr. 49).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

Additionally, "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. Hargis, 945 F.2d at 1489. The ALJ's questioning did mirror Claimant's impairments and his RFC findings.

**Functional Analysis**

Claimant next contends the ALJ should have performed a function-by-function analysis of what Claimant can do in order to justify the RFC. The ALJ performed this function in his decision by analyzing the medical record and inquiring of the vocational expert. Other than parroting the various standards under the regulations and case authority, Claimant does not make clear what she believes is lacking from the ALJ's analysis. In short, the

argument lacks specificity.  No error is found on this basis.

**Claimant's Urinary Incontinence**

Claimant contends the ALJ failed to consider her urinary incontinence as either a severe or non-severe impairment which must be addressed in the RFC.  The ALJ recognized Claimant's single treatment for the condition in April of 2014.  (Tr. 21).  The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).  Nothing in the record, including Claimant's application for benefits, indicates that this condition created a functional limitation upon Claimant's ability to engage in basic work activities.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE